Kenneth G. FORRESTER, Appellant

v.

Michael HANSON and Sea Gull Lighting Co., Appellees

v.

Gene Z. Salkind, M.D., Appellee.

Superior Court of Pennsylvania.

Argued April 6, 2005.

Filed June 9, 2006.

J. Davy Yockey, Trevose, for appellant.

Beatrice O'Donnell, Philadelphia, for Salkind, appellee.

BEFORE: STEVENS, TODD, and GANTMAN, JJ.

OPINION BY GANTMAN, J.:

¶ 1 Appellant, Kenneth G. Forrester, asks us to determine whether the trial court abused its discretion when it transferred this case to Montgomery County, pursuant to Pennsylvania Rule of Civil Procedure 1006(a.1). Appellant also challenges the trial court's order which granted the motion for leave to file joinder complaint filed by Appellees, Michael Hanson and Sea Gull Lighting Co. We hold Rule 1006(a.1) does not apply to the instant case, and the trial court misapplied the law when it transferred the matter to Montgomery County. We further hold that this Court has no jurisdiction at this time to entertain Appellant's challenge to Appellees' joinder complaint. Accordingly, we reverse and remand.

¶ 2 The relevant facts and procedural history of this appeal are as follows. On October 29, 2002, Appellant and Appellee Michael Hanson were involved in a motor

vehicle accident on Interstate 95 in Philadelphia. At the time of the accident, Mr. Hanson was working within the scope of his employment for Appellee Sea Gull Lighting Co. On February 10, 2003, Appellant filed a complaint against Mr. Hanson and Sea Gull Lighting Co. ("Appellees") in Philadelphia County. Appellant demanded fifteen million dollars in damages for personal injuries allegedly arising out of the automobile accident. Subsequently, Appellees filed an answer with new matter which claimed Appellant's recovery must be limited by the provisions of Pennsylvania's Comparative Negligence Act. Appellees asserted Appellant's own negligence substantially contributed to his alleged injuries. Additionally, Appellees stated any injuries "were caused solely and primarily by the carelessness...of other third-parties, who may be presently unknown...." (Answer Containing New Matter, filed 4/10/03, at 4; R.R. at 21a).

¶ 3 The trial court issued a case management order on May 8, 2003, directing the parties to complete all discovery no later than April 5, 2004. Discovery progressed until April 2, 2004, when Appellees filed a motion for extraordinary relief, seeking a four-month extension of pre-trial deadlines, as well as limited discovery on issues of medical negligence. On April 8, 2004, Appellees' counsel withdrew his appearance and current counsel simultaneously entered their appearance on the record. Also on April 8, 2004, Appellees filed a motion for leave to file joinder complaint. Appellees sought leave to join Appellee Gene Z. Salkind, M.D., Appellant's treating physician and expert witness, due to his alleged negligent treatment of Appellant. Appellant filed a response in opposition to Appellees' motion for leave to file a joinder complaint, on April 27, 2004.

¶ 4 On April 30, 2004, the court denied Appellees' motion for extraordinary relief and refused to extend the pre-trial deadlines. On May 24, 2004, Appellees filed an expert proffer in support of their motion for leave to file the joinder complaint. In this filing, John J. Labiak, M.D., a neurosurgeon, opined that Appellant's injuries pre-dated the October 29, 2002 automobile accident. Further, Dr. Labiak blamed Appellant's problems on Dr. Salkind: "Dr. Salkind's treatment fell below the applicable standard of care and caused the injuries discussed." (Expert Proffer in Support of Motion for Leave to File Joinder Complaint, filed 5/24/04, at 2). On June 7, 2004, the court granted Appellees' motion for leave to file a joinder complaint against Dr. Salkind. The court also ordered Appellees to file the joinder complaint, with a certificate of merit in compliance with the Medical Care Availability and Reduction of Error ("MCARE") Act,[1] within seven days.

¶ 5 Appellees filed their joinder complaint and certificate of merit on June 10, 2004. On July 22, 2004, Dr. Salkind filed a petition to strike Appellees' improper joinder complaint. Dr. Salkind's petition also raised the issue of improper venue under Pennsylvania Rule of Civil Procedure 1006(a.1):

> Based upon the allegations in the joinder complaint, all of the allegedly negligent acts and omissions occurred at Dr. Salkind's office, 727 Welsh Road, Suite 108, Huntingdon Valley, PA 19006, and at Holy Redeemer Hospital, located at 1648 Huntingdon Pike, Meadowbrook, PA 19046. As both of these addresses are in Montgomery County, venue for [Appellees'] malpractice claims cannot lie in the Philadelphia Court of Common Pleas.

---

1.  40 P.S. §§ 1303.101–1303.907.

(Petition to Strike Improper Joinder Complaint, filed 7/22/04, at 4; R.R. at 96a). On September 16, 2004, the trial court entered an order which sustained Dr. Salkind's objection to venue and transferred the case to the Montgomery County Court of Common Pleas. This timely appeal followed.

¶ 6 Appellant raises six issues for our review:

DID THE TRIAL COURT ERR IN TRANSFERRING VENUE PURSUANT TO PA.R.C.P. 1006(A.1), WHERE [APPELLANT] DID NOT BRING ANY "MEDICAL PROFESSIONAL LIABILITY CLAIM" AS DEFINED BY THE MCARE LEGISLATION, AND THE ONLY CLAIM AGAINST ANY HEALTH CARE PROVIDER AROSE BY WAY OF A JOINDER COMPLAINT FILED BY [APPELLEES] MORE THAN THIRTEEN MONTHS AFTER [APPELLANT] PROPERLY FILED SUIT IN PHILADELPHIA COUNTY?

WAS THE LATE JOINDER OF [APPELLEE] DR. SALKIND, WHICH WAS THE UNDERLYING BASIS FOR THE ULTIMATE TRANSFER OF VENUE, AN ABUSE OF DISCRETION OR IMPROPER AS A MATTER OF LAW?

DID THE TRIAL COURT'S APPLICATION OF PA.R.C.P. 1006(A.1) RUN CONTRARY TO THE STATED AND INTENDED PURPOSE OF THE AMENDED RULE UNDER THE FACTS OF THIS CASE?

IS [APPELLANT'S] CLAIM SUBJECT TO TRANSFER OF VENUE UNDER RULE 1006(A.1) WHERE HE DID NOT INSTITUTE ANY "MEDICAL PROFESSIONAL LIABILITY CLAIM" AS DEFINED UNDER THE MCARE ACT, AND WHERE HE DID NOT INSTITUTE ANY ACTION TO ENFORCE A JOINT OR JOINT AND SEVERAL LIABILITY CLAIM?

DID THE GENERAL ASSEMBLY INTEND TO ALLOW [APPELLEES] TO ENGAGE IN "BACK DOOR FORUM SHOPPING" BY JOINING [APPELLANT'S] TREATING PHYSICIAN AND MEDICAL EXPERT WITNESS AS AN ADDITIONAL DEFENDANT, AND ASSERTING THAT THE PHYSICIAN/EXPERT WAS GUILTY OF MALPRACTICE IN HIS TREATMENT OF [APPELLANT]?

WAS THERE A SUFFICIENT FACTUAL RECORD BELOW TO SUBSTANTIATE THE [TRIAL] COURT'S ASSERTED BASIS FOR TRANSFERRING VENUE, *I.E.*, THAT THE ALLEGEDLY NEGLIGENT MEDICAL CARE WAS "FURNISHED" IN MONTGOMERY COUNTY?

(Appellant's Brief at 4).[2]

¶ 7 In Appellant's first, third, and fourth issues, he asserts the trial court erroneously construed the change of venue provisions set forth in the MCARE Act and Rule 1006(a.1). Specifically, Appellant contends a "medical professional liability claim" can be brought against a healthcare provider only in a county in which the cause of action arose. Appellant maintains

---

**2.** This Court may quash or dismiss an appeal if the appellant's brief fails to conform to the requirements set forth in the Pennsylvania Rules of Appellate Procedure. Pa.R.A.P. 2101. We note with disapproval the failure of Appellant's brief to conform to the Pennsylvania Rules of Appellate Procedure. Specifically, the argument section of Appellant's brief is not divided into appropriate subsections which correspond to the questions Appellant has raised on appeal. *See* Pa.R.A.P. 2119(a). Nevertheless, this defect does not substantially impair our ability to review the issues presented, and we will proceed to address Appellant's claims.

Appellees' joinder complaint does not set forth a medical professional liability claim, because it "does not make any demand for the 'recovery of damages or loss' in favor of [Appellees] and against Dr. Salkind." (Appellant's Brief at 27). Appellant concludes the trial court abused its discretion when it transferred this case to Montgomery County, pursuant to Rule 1006(a.1). We agree.

¶ 8 "Although an order transferring venue in a civil action is interlocutory in nature, such order is appealable as of right." *Deutschbauer v. Barakat*, 814 A.2d 246, 248 (Pa.Super.2002) (citing Pa. R.A.P. 311(c)). "[A] trial court's decision to transfer venue will not be disturbed absent an abuse of discretion." *Bilotti–Kerrick v. St. Luke's Hosp.*, 873 A.2d 728, 729–30 (Pa.Super.2005) (quoting *Wood v. E.I. du Pont de Nemours and Co.*, 829 A.2d 707, 709 (Pa.Super.2003)).

> An abuse of discretion occurs when the trial judge overrides or misapplies the law, or exercises judgment in a manifestly unreasonable manner, or renders a decision based on partiality, prejudice, bias, or ill-will. Additionally, a plaintiff's choice of forum is to be given great weight, and the burden is on the party challenging the choice to show it was improper...however, a plaintiff's choice of venue is not absolute or unassailable. If there exists any proper basis for the trial court's decision to grant a petition to transfer venue, the decision must stand.

*Bilotti–Kerrick, supra* at 730 (internal citations and quotation marks omitted).

¶ 9 "The Pennsylvania Supreme Court, which has sole responsibility for promulgation of rules regarding venue, announced an amendment to Pennsylvania Rule of Civil Procedure 1006 (the rule governing venue) on January 27, 2003, and on May 5, 2003, the Court declared this amended rule to apply to all actions filed on or after January 1, 2002." *Id.* Rule 1006(a.1) provides:

### Rule 1006.   Venue. Change of Venue

\*      \*      \*      \*      \*      \*

(a.1) Except as otherwise provided by subdivision (c), a medical professional liability action may be brought against a health care provider for a medical professional liability claim only in a county in which the cause of action arose.

Pa.R.C.P. 1006(a.1). Section 5101.1(c) of the Judicial Code defines the terms "medical professional liability action" and "medical professional liability claim" as follows:

### § 5101.1   Venue in medical professional liability actions

\*      \*      \*      \*      \*      \*

(c) **Definitions.**—As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

\*      \*      \*      \*      \*      \*

"Medical professional liability action." Any proceeding in which a medical professional liability claim is asserted, including an action in a court of law or an arbitration proceeding.

"Medical professional liability claim." **Any claim seeking the recovery of damages or loss** from a health care provider arising out of any tort or breach of contract causing injury or death resulting from the furnishing of health care services which were or should have been provided.

42 Pa.C.S.A. § 5101.1(c) (emphasis added).[3]

---

**3.** In *North–Central Pennsylvania Trial Lawyers*      *Ass'n v. Weaver*, 827 A.2d 550 (Pa.Cmwlth.

¶ 10 Instantly, the trial court transferred this case to Montgomery County based solely upon the allegations set forth in Appellees' joinder complaint. *See* Trial Court Opinion, entered December 13, 2004, at 3 (confirming venue is proper only in Montgomery County pursuant to Rule 1006(a.1), based upon allegations contained in joinder complaint). Appellees' joinder complaint asserted: "If [Appellant] sustained any injuries and damages as alleged in the complaint, which allegations [Appellees] expressly deny, the same were caused solely by the negligent and/or careless acts of Dr. Salkind in providing medical treatment to [Appellant]. (Joinder Complaint, filed 6/10/04, at 6; R.R. at 74a)." Appellees listed multiple occurrences of allegedly negligent care Dr. Salkind provided to Appellant, and they concluded Dr. Salkind caused Appellant "numerous injuries that would not have occurred had appropriate medical care been rendered." (*Id.* at 8; R.R. at 76a). Appellees requested the following relief:

> WHEREFORE, [Appellees] demand judgment in their favor and against [Appellant], together with an award of taxable costs, or in the alternative, that judgment be entered against additional defendant, Gene Z. Salkind, M.D., for sole liability to [Appellant], and/or for several liability to [Appellant] in a proportion to be determined by the jury.

(*Id.*)

¶ 11 Significantly, Appellees' joinder complaint did not seek to recover damages

or loss directly from Dr. Salkind. *See* 42 Pa.C.S.A. § 5101.1(c). In their joinder complaint, Appellees did not assert a tort or breach of contract claim against Dr. Salkind, as patients or representatives of patients. Instead, Appellees sought judgment in their favor as against Appellant, or a jury determination regarding the amount of Dr. Salkind's liability to Appellant, in the event of a verdict in favor of Appellant. Because Appellees did not seek to recover damages or loss directly from Dr. Salkind, we conclude Appellees' joinder complaint did not constitute a "medical professional liability claim" as defined in Section 5101.1. *See id.* Accord *Bender v. Pennsylvania Ins. Dep.*, 893 A.2d 161 (Pa.Cmwlth.2006) (holding hospital's action to recover indemnity from health care providers was not medical professional liability claim within meaning of MCARE Act; no tort or breach of contract between hospital and providers arose from furnishing of health care services).

¶ 12 Moreover, Appellees asserted their claim is not a medical professional liability action. As noted by Appellant, Appellees made this assertion in their memorandum of law in opposition to Dr. Salkind's petition to strike the joinder complaint:

> Dr. Salkind claims that the joinder complaint should have been filed in Montgomery County under the revised venue rules for medical malpractice actions. Dr. Salkind is incorrect, for the additional reason that [Appellees'] joinder claim

2003) (*en banc*), the Commonwealth Court held that Section 5101.1 is unconstitutional, because the legislature is not permitted to act in regard to venue.

The Commonwealth Court specifically held that the matter of venue is procedural in nature, and, therefore, regulation of such is committed to the exclusive authority of the Pennsylvania Supreme Court under Article V, Section 10(c). As such, while the Commonwealth Court made no ruling concern-

ing the constitutionality of newly amended Pa.R.C.P. 1006, the Commonwealth Court held that 42 Pa.C.S. § 5101.1 concerning venue is unconstitutional.

*Connor v. Crozer Keystone Health System*, 832 A.2d 1112, 1116 n. 3 (Pa.Super.2003). This Court, however, is not bound by any decision of the Commonwealth Court. *Id.* Moreover, Appellant makes no argument concerning the constitutional validity of Section 5101.1.

against Dr. Salkind, for a jury allocation of several or sole liability to [Appellant], is not a "medical professional liability claim."

\* \* \* \* \* \*

[Appellees'] joinder complaint against Dr. Salkind does not include a "medical professional liability claim" as defined by 42 Pa.C.S. § 5101.1(c). That is because the joinder complaint does not assert a "claim seeking the recovery [of] damages or loss from Dr. Salkind." The "Wherefore" clause of the joinder complaint proves the point. . . .

\* \* \* \* \* \*

The joinder complaint does not seek "damages or loss" from Dr. Salkind, nor does it ask for judgment in favor of [Appellees] and against Dr. Salkind. Instead, it asks the jury to make an allocation, of sole or several liability to [Appellant], as authorized by [Pennsylvania Rule of Civil Procedure] 2252(a)(1) & (3).

The applicable venue provision (which [Appellees] cited in the joinder complaint), is Rule 1006(a), which provides, *inter alia,* that an action may be brought in a county "in which the cause of action arose or where a transaction or occurrence took place out of which the cause of action arose." Pa.R.C.P. 1006(a). To the extent that [Appellees'] claim for an allocation of sole or several liability may be regarded as a "cause of action," it arose in Philadelphia County, where [Appellees] were sued, where the jury will allocate liability among [Appellees] and Dr. Salkind, and where the underlying low-speed collision occurred.

(Appellees' Memorandum of Law in Opposition to Additional Defendant's Petition to Strike Joinder Complaint, 8/11/04, at 12–14; R.R. at 123(a)–125(a)). We conclude Appellees' joinder complaint does not as-

sert a medical professional liability claim against Dr. Salkind, under Section 5101.1(c) of the Judicial Code. *See* 42 Pa. C.S.A. § 5101.1(c). Thus, Rule 1006(a.1) does not apply to the instant case, and the trial court misapplied the law when it sustained Dr. Salkind's objections to venue and transferred the matter to Montgomery County. *See Bilotti–Kerrick, supra.*

¶ 13 In his second issue, Appellant contends Appellees did not provide a reasonable excuse for their delay in seeking to join Dr. Salkind, "[i]n view of the fact that [Appellees] had persistently taken the position . . . that Dr. Salkind was a contributing cause of [Appellant's] condition. . . ." (Appellant's Brief at 18). Additionally, Appellant insists he was prejudiced by the late joinder, because he had planned to use Dr. Salkind as his expert witness. Appellant's claim challenges the trial court's June 7, 2004 order, granting Appellees' motion for leave to file joinder complaint.

¶ 14 As a prefatory matter, we must examine whether this Court has jurisdiction to consider this claim. "[T]he jurisdiction of the court in a matter before it may be raised at any time." *Kessler v. Cardonick,* 229 Pa.Super. 97, 323 A.2d 378, 379 (1974). This Court can raise the issue of jurisdiction *sua sponte. Tohan v. Owens–Corning Fiberglas Corp.,* 696 A.2d 1195, 1198 (Pa.Super.1997), *appeal denied,* 553 Pa. 700, 718 A.2d 786 (1998). This Court does not have jurisdiction to entertain an appeal from a non-appealable, interlocutory order. *Davis Supermarkets, Inc. v. United Food and Commercial Workers, Local 23,* 368 Pa.Super. 290, 533 A.2d 1068 (1987).

¶ 15 "It is well settled that an appeal will lie only from a final order unless otherwise permitted by statute." *Techtmann v. Howie,* 720 A.2d 143, 145 (Pa.Super.1998). The Pennsylvania Rules

of Appellate Procedure define a final order as follows:

## Rule 341. Final Orders; Generally

\*　　\*　　\*　　\*　　\*　　\*

**(b) Definition of final order.** A final order is any order that:

(1) disposes of all claims and of all parties; or

(2) any order that is expressly defined as a final order by statute; or

(3) any order entered as a final order pursuant to subdivision (c) or this rule.

**(c) Determination of finality.** When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim or when multiple parties are involved, the trial court or governmental unit may enter a final order as to one or more but fewer than all of the claims and parties only upon an express determination that an immediate appeal would facilitate resolution of the entire case. Such an order becomes appealable when entered. In the absence of such a determination and entry of a final order, any order or other form of decision that adjudicates fewer than all the claims and parties shall not constitute a final order.

\*　　\*　　\*　　\*　　\*　　\*

Pa.R.A.P. 341(b), (c).

¶ 16 Instantly, the court's order granting Appellee's motion for leave to file joinder complaint does not dispose of all claims and all parties. *See* Pa.R.A.P. 341(b)(1). *See also School Dist. of City of Monessen v. Apostolou Associates, Inc.,* 761 A.2d 597 (Pa.Super.2000), *appeal denied,* 565 Pa. 674, 775 A.2d 808 (2001) (holding order granting motion to add defendant is interlocutory and non-appealable; order does not resolve underlying claims in action and does not put anyone out of court). The court's order is also not expressly defined as a final order by statute, and the court did not certify this order as immediately appealable. *See* Pa. R.A.P. 341(b)(2), (3). Additionally, an order granting joinder of a party does not constitute a basis for an interlocutory appeal as of right. *See* Pa.R.A.P. 311 (listing interlocutory orders to which right to immediate appeal attaches). Therefore, Appellant's second issue challenges a non-appealable, interlocutory order, and this Court has no jurisdiction at this time to entertain the issue. *See Davis Supermarkets, Inc., supra.* Accordingly, we decline to address this issue.

¶ 17 In his fifth issue, Appellant insists the trial court's decision to transfer this case to Montgomery County is contrary to public policy. In his sixth issue, Appellant claims Appellees presented insufficient evidence to support their assertion that the medical treatment provided by Dr. Salkind occurred in Montgomery County. Due to our disposition of Appellant's first, third and fourth issues, however, we need not address these arguments.

¶ 18 Based upon the foregoing, we hold Rule 1006(a.1) does not apply to the instant case, and the trial court misapplied the law when it transferred the matter to Montgomery County. We further hold that this Court has no jurisdiction at this time to entertain Appellant's challenge to Appellees' joinder complaint. Accordingly, we reverse the trial court's order sustaining Dr. Salkind's objections to venue and transferring the matter to the Montgomery County Court of Common Pleas. We also remand the matter to the Philadelphia County Court of Common Pleas for further proceedings.

¶ 19 Order reversed; case remanded for further proceedings in Philadelphia County. Jurisdiction is relinquished.