J-A27027-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| MAX FAUST | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| BAYERISCHE MOTOREN WERKE AG AND BMW OF NORTH AMERICA, LLC A/K/A "BMW, NA' AND/OR "BMW" AND TAKATA CORPORATION AND TK HOLDINGS, INC AND N&H, LLC D/B/A HANNA MOTORS | |
| | No. 3468 EDA 2015 |

Appeal from the Order Entered October 15, 2015
In the Court of Common Pleas of Philadelphia County
Civil Division at No(s): November Term, 2014, No. 000656

BEFORE:  PANELLA, J., LAZARUS, J., and FITZGERALD, J.[*]

MEMORANDUM BY LAZARUS, J.:                **FILED MAY 24, 2017**

Max Faust appeals from the order granting the preliminary objections of Appellees, Bayerische Motoren Werke AG ("BMW"), BMW of North America ("BMW NA"), Takata Corporation, TK Holdings, Inc. (collectively, "Takata"), and N&H, LLC, and transferring this personal injury case to Lancaster County based upon a finding of improper venue.  Faust contends that the trial court erred in concluding that BMW NA established that it did not regularly conduct business in Philadelphia and in entering the instant order prior to the

_____

[*] Former Justice specially assigned to the Superior Court.

completion of discovery on the issue of venue. After careful review, we affirm.

This case arises from a motor vehicle accident that occurred in Lancaster County. Faust was a passenger in a vehicle involved in the accident, during which the vehicle's air bag deployed, causing severe injury to Faust's right eye.

Faust filed suit against the vehicle's manufacturer, BMW; the manufacturer's North American marketing subsidiary, BMW NA; the airbag manufacturer and its subsidiary, Takata; and the dealership that sold the vehicle, N&H, LLC. Faust filed the complaint in Philadelphia County. Subsequently, all defendants except BMW[1] filed preliminary objections asserting that Philadelphia County was an improper venue for the suit. The trial court granted Faust's request for discovery on the issue.

Faust took several depositions and sought further information from BMW NA in the form of documents indicating the number of sales of BMW vehicles to customers in Philadelphia County. BMW NA asserted that it did not maintain sales figures in a way that would allow it to respond to this request and moved for permission to file an affidavit attesting to this fact. The Honorable Lisa M. Rau granted BMW NA permission to file the affidavit in response to Faust's request.

---

[1] Resolution of BMW's preliminary objection to personal jurisdiction has been stayed, pending the outcome of this appeal.

BMW NA's assertion was contradicted by the deposition testimony of employees of a nonparty BMW dealership near Philadelphia. Nick DeFelice, sales manager at the dealership, testified that he could compile a list of sales to Philadelphia residents by performing a search of sales by zip code. **See** N.T., DeFelice Deposition, 5/15/15, at 11-12. Marc Schramm, general manager of the dealership, testified that it would not be difficult for the dealership to identify customers who resided in Philadelphia County. **See** N.T., Schramm Deposition, 5/15/15, at 42. Sales made by the dealership are reported to BMW NA on an individual basis. **See id.** at 64.

Based upon these discrepancies, Faust requested that he be permitted to depose the affiant of BMW NA's response. Judge Rau did not rule on this request, but deferred to the trial court. Ultimately, the trial court entered an order granting the preliminary objections of Appellees, and ordered the case transferred to Lancaster County.

On appeal, Faust raises two issues for our review. First, he contends that the trial court abused its discretion in finding that the quality of BMW NA's business contacts with Philadelphia County was insufficient to establish venue.[2] Second, he argues that the trial court erred in finding, prior to the

---

[2] Since Faust has asserted various theories of joint and several liability amongst the Appellees, venue need only be proper with respect to any one of them. **See** Pa.R.C.P. 1006(c)(1). Thus, if Philadelphia County is a suitable venue for his claims against BMW NA, Philadelphia County would be a suitable venue for his claims against the other Appellees, absent BMW's
*(Footnote Continued Next Page)*

close of discovery on the issue, that the quantity of BMW NA's business contacts with Philadelphia County was insufficient to establish venue. Because we conclude that the quality of BMW NA's contacts with Philadelphia County is insufficient to establish venue, we need only address Faust's first claim.

We begin by noting that this matter is before us as an interlocutory appeal as of right. Specifically, Pa.R.A.P. 311 provides that "[a]n appeal may be taken as of right from an order in a civil action or proceeding changing venue, transferring the matter to another court of coordinate jurisdiction, or declining to proceed in the matter on the basis of *forum non conveniens* or analogous principles." Pa.R.A.P. 311(c).

Our standard of review on this issue is one of abuse of discretion. ***See Purcell v. Bryn Mawr Hospital***, 579 A.2d 1282, 1284 (Pa. 1990). An abuse of discretion occurs when the trial judge overrides or misapplies the law, or exercises judgment in a manifestly unreasonable manner, or renders a decision based on partiality, prejudice, bias, or ill-will. ***Forrester v. Hanson***, 901 A.2d 548, 552 (Pa. Super. 2006) (citation omitted). A plaintiff's choice of forum is to be given great weight, and the burden is on the party challenging the choice to show it was improper. ***Id.*** However, a

(Footnote Continued) —————

pending jurisdictional challenge. Faust does not contend that any of the other Appellees regularly conduct business in Philadelphia County.

- 4 -

plaintiff's choice of venue is not absolute or unassailable. *Id.* If there exists any proper basis for the trial court's decision to grant a petition to transfer venue, the decision must stand. *Id.*

The Pennsylvania Rules of Civil Procedure provide for venue over corporate or other business-entity defendants as follows:

> (a) Except as otherwise provided by an Act of Assembly, by Rule 1006(a.1) or by subdivision (b) of this rule, a personal action against a corporation or similar entity may be brought in and only in
>
> > (1)  the county where its registered office or principal place of business is located;
> >
> > (2)  a county where it regularly conducts business;
> >
> > (3)  the county where the cause of action arose;
> >
> > (4)  a county where a transaction or occurrence took place out of which the cause of action arose, or
> >
> > (5)  a county where the property or a part of the property which is the subject matter of the action is located provided that equitable relief is sought with respect to the property.

Pa.R.C.P. 2179(a).

At issue in this case is subsection (a)(2), which establishes that venue is proper in any county where a defendant regularly conducts business.

> In determining whether a corporation or partnership regularly conducts business in a county, we employ a quality-quantity analysis. A business entity must perform acts in a county of sufficient quality and quantity before venue in that county will be established. Quality of acts will be found if an entity performs acts in a county that directly further or are essential to the entity's business objective; incidental acts in the county are not sufficient to meet the quality aspect of the test. Acts that aid a main purpose are collateral and incidental while those necessary to an entity's existence are direct.

***Zampana-Barry v. Donaghue***, 921 A.2d 500, 503-04 (Pa. Super. 2007) (citations omitted). Mere solicitation of business in a particular county does not amount to conducting business. ***Purcell v. Bryn Mawr Hosp.***, 579 A.2d 1282, 1287 (Pa. 1990).

Faust argues that the trial court erred in concluding that BMW NA's contacts with Philadelphia County are of insufficient quality to establish venue pursuant to the "quality-quantity" test. To the contrary, Faust asserts that he "identified for the [trial] court a variety of evidence[3] demonstrating

_____

[3] Faust alleged the following contacts with Philadelphia County:

- BMW NA wants to sell cars to Philadelphia County residents;
- BMW vehicles are currently sold to Philadelphia County residents;
- BMW NA directly assigns multiple dealerships to a "Primary Market Area" (a/k/a "PMA"), multiple of which are assigned territories located throughout Philadelphia County;
- BMW NA expects [] its dealerships, in addition to the Delaware Valley Dealership Group [("DVDG")], to advertise within Philadelphia County;
- BMW NA provides direct funding for advertising and promotional efforts for the DVDG, which is comprised of individual dealerships that sell directly to Philadelphia County residents;
- BMW NA funds television advertisements for the DVDG, [which] broadcasts within Philadelphia County;
- BMW NA created a corporate fleet sales program, where client advisors are sent within Philadelphia County to generate corporate sales;
- BMW NA created a co-op program, where it provides direct funding to its dealerships to promote BMW, support new product launches, create an urgency towards purchase, among other things;

*(Footnote Continued Next Page)*

BMW NA's contacts with Philadelphia County that directly advance" its corporate objective. Specifically, Faust claims he "provided record evidence in the [trial] court that BMW NA itself performed *marketing* and other essential activities directed towards and directly *in* Philadelphia County which were in direct furtherance of BMW NA's corporate objective." Brief of

*(Footnote Continued)* ─────────

- BMW NA, through the co-op program, directly funds various promotional efforts conducted by dealerships who have Philadelphia County as PMA;
- BMW NA, through the co-op program, directly funds a mailer program for dealerships to promote sales to Philadelphia County residents;
- BMW NA, through the co-op program, directly funds various online efforts to target customers in Philadelphia County;
- BMW NA, through the co-op program, directly funds various radio advertisements that broadcast in Philadelphia County[;]
- BMW NA, through the co-op program, directly funds events in Philadelphia County that have included demonstrations of BMW vehicles;
- BMW NA demonstrates cars and generates business at the Philadelphia Auto Show;
- BMW directly pays client advisors/sales personnel to attend the Philadelphia Auto Show <u>for the purpose of selling vehicles</u>;
- BMW NA's direct efforts in Philadelphia County at the Philadelphia Auto Show have resulted in both the sale and leasing of BMW vehicles;
- BMW NA, through its own marketing, advertises in Philadelphia County; [and]
- BMW NA . . . financially benefits when more BMW vehicles are sold.

Brief of Appellant, at 19-21 (emphasis in original). We note that the Philadelphia Auto Show is a "non-selling show," meaning that no sales are allowed on the floor. <u>FAQ</u>, Philadelphia Auto Show, 2018, http://www.phillyautoshow.com/show-info/faqs/ (visited 5/3/17).

Appellant, at 25 (emphasis in original). Indeed, Faust argues that BMW NA did everything it legally could, short of effectuating a sale directly to a consumer,[4] to further its corporate objectives and that the trial court erred in requiring sales in Philadelphia County to satisfy the quality test. Because it cannot conduct direct sales to consumers, Faust asserts that under the trial court's logic, BMW NA could never "regularly conduct business" anywhere in Pennsylvania.

In order to apply the "quality-quantity" analysis, we must first establish BMW NA's corporate objective. The trial court summarized BMW NA's primary business purpose as "to sell or lease its vehicles to individual consumers, which is facilitated by a national distribution network of authorized, affiliated, and independently-owned BMW dealerships."[5] Trial Court Opinion, 12/2/15, at 6. Thus, in order for venue to lie in Philadelphia

_____

[4] Under Pennsylvania law, it is illegal for a vehicle manufacturer to sell directly to a consumer. *See* 63 P.S. § 818.12(b) ("It shall be a violation of this act for any manufacturer, factory branch, distributor, field representative, officer, agent or any representative whatsoever of such manufacturer, factory branch or distributor licensed under this act to: . . . (9) Sell or exchange with a second or final stage manufacturer, retail consumer or end user except through a licensed new vehicle dealer.").

[5] BMW NA accomplishes this by wholesaling vehicles to independently owned and operated dealerships, none of which are located in Philadelphia County, which in turn sell them to consumers. In addition, BMW NA funds direct mail, radio, television, internet-based, and in-person marketing and advertising programs, some of which are directed at residents of Philadelphia County. Trial Court Opinion, 12/2/15, at 7.

County, BMW NA's contacts would have to be "directly, furthering or essential to" that purpose and be "so continuous and sufficient to be general or habitual" and "necessary to its existence[.]" **Singley v. Flier**, 851 A.2d 200, 202 (Pa. Super. 2004) (citation omitted). The court reviewed the contacts alleged by Faust and concluded they "fall far short of satisfying" the requirements for venue as established by our jurisprudence. Trial Court Opinion, 12/2/15, at 7 (emphasis in original). The court emphasized that the "vast majority" of BMW NA's Philadelphia contacts are comprised of "mere solicitation," which cannot form the basis for venue. The court also noted that Faust provided no evidence that any vehicle sales or leases have been consummated within Philadelphia County, and discounted Faust's reliance on BMW NA's participation in the Philadelphia Auto Show, concluding that "the mere fact that BMW NA lets people see their latest models, sit in the driver's seat, and kick the tires a bit, does not transform [] *enticement* into a connection with Philadelphia County that would render it a proper venue for this lawsuit." **Id.** at 8 (emphasis in original).

We agree with the trial court that BMW NA's contacts with Philadelphia County are not of the quality necessary to confer venue. Faust points to eighteen separate "contacts" with Philadelphia that he claims directly advance BMW NA's corporate objective. However, nearly every one of those "contacts" may be properly characterized as solicitation. As stated above, our courts have repeatedly held mere solicitation to be insufficient, without more, to establish venue. **See Purcell**, **supra**; **see also Law v. Atl. Coast**

***Line R. Co.***, 79 A.2d 252, 253 (Pa. 1951) ("doing business" must be established by solicitation plus other activities).

In addition to the laundry list of advertising and marketing activities allegedly pursued by BMW NA in Philadelphia County, Faust focuses on the sales of BMW autos to Philadelphia residents. However, this Court has held that purchases of goods or services in one county by residents of another county are insufficient to establish venue in the purchasers' home county. In ***Masel v. Glassman***, 689 A.2d 314 (Pa. Super. 1997), this Court denied venue in Philadelphia where a Bucks County defendant: received 20% of its gross revenues from Philadelphia third-party payers; used a Philadelphia recruitment agency to hire new physicians; and earned 3% of its gross revenue from Philadelphia residents. In holding that these contacts were insufficient, the Court focused on the county in which the services were provided, rather than the domicile of the patients: "[A]ll services are provided in Bucks County. Plaintiff does not point to, and we cannot find, corporate activities taking place in Philadelphia County which directly further or are essential to the corporate object." ***Id.*** at 318. Likewise, here, all "corporate activities" of BMW NA occur in counties other than Philadelphia.

Faust also relies on ***Canter v. American Honda Motor Corp.***, 231 A.2d 140 (Pa. 1967). In that case, Motor Sport, a Honda motorcycle dealer, filed preliminary objections disputing venue in Philadelphia County. Motor Sport asserted that: it was a Delaware Corporation with its principle place of business in Delaware County; it had never conducted business in

- 10 -

Philadelphia County; the accident in question occurred in Montgomery County; and no transaction or occurrence out of which the cause of action arose occurred in Philadelphia County. However, the record revealed that Motor Sport demonstrated cars and consummated approximately one to two percent of its total sales in Philadelphia County. As these were acts that were "directly essential to and in furtherance of [Motor Sport's] corporate objects," the Supreme Court found that the "quality" test had been met. *Id.* at 143. However, as the trial court in this matter correctly noted, *Canter* is distinguishable from the case at bar in that, here, there is no dispute that BMW NA does not consummate any sales or leases in Philadelphia County.

In sum, Faust has failed to demonstrate that BMW NA conducts any activities in Philadelphia County that are essential to its corporate objective, which is the sale of BMW automobiles. Although the corporation engages in various marketing activities in Philadelphia County, including participation in the Philadelphia Auto Show, mere solicitation is insufficient to satisfy the "quality" prong of the venue test. Rather, such activity merely "aid[s] or enhance[s] a main purpose and must be deemed collateral and incidental." *Krosnowski v. Ward*, 836 A.2d 143, 149 (Pa. Super. 2003) (en banc) (Montgomery County hospital's affiliation with Children's Hospital of Philadelphia (CHOP) insufficient to establish venue in Philadelphia County where hospital is affiliated with CHOP for inpatient and outpatient pediatric services; hospital's website states that its pediatric services are enhanced by CHOP connection; hospital physicians consult with CHOP specialists;

transport service shuttles patients between hospital and CHOP; hospital is member of inpatient "network" which allows collaboration among various satellite facilities; and medical director of hospital's pediatric program is on staff at CHOP).  Accordingly, the trial court did not abuse its discretion in granting the Appellees' preliminary objections and transferring the case to Lancaster County.  Because Faust has failed to satisfy the "quality" prong of the venue test, we need not address his second claim relating to discovery on the issue of "quantity."

Order affirmed.

FITZGERALD, J., Joins this memorandum.

PANELLA, J., Files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/24/2017